No. 26-1832

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

**AFRICAN COMMUNITIES TOGETHER, et al.**,

Plaintiffs-Appellees,

v.

**MARKWAYNE MULLIN, et al.**,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Massachusetts
No. 26-cv-11201

## MOTION FOR SUMMARY REVERSAL AND ALTERNATIVE MANDAMUS PETITION

(Relief requested by August 6, 2025)

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH WELCH
*Senior Counsel to the Assistant Attorney General*

JEFFREY M. HARTMAN
*Trial Attorney*
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 532-4404
Jeffrey.M.Hartman@usdoj.gov

# **TABLE OF CONTENTS**

INTRODUCTION..................................................................................1

BACKGROUND ................................................................................6

APPELLATE JURISDICTION ..............................................................9

ARGUMENT ...................................................................................13

      I.     THIS COURT SHOULD SUMMARILY REVERSE AND VACATE THE DISTRICT COURT'S UNREASONED INTERLOCUTORY ORDER BLOCKING THE SECRETARY'S TPS TERMINATION............................14

      II.    MANDAMUS IS ANOTHER APPROPRIATE TOOL TO CORRECT THE DISTRICT COURT'S CLEAR ERRORS ..............................................................22

CONCLUSION ................................................................................24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

EXHIBITS

# TABLE OF AUTHORITIES
## CASES

*Abbott v. Perez,*
   585 U.S. 595. ............................................................................... 9, 10, 11

*Aberdeen & Rockfish R.R. Co. v. Students Challenging Regulatory Agency Procedures,*
   422 U.S. 289 (1975) ...........................................................................11

*African Cmties. Together v. Mullin,*
   No. 26-1376 (2026) ..............................................................................4

*African Cmties. Together v. Mullin,*
   No. 26-1254 (2026) ..............................................................................4

*Amer. Pub. Health Ass'n,*
   145 S. Ct. 2658 (2025) .......................................................................24

*Atieh v. Riordan,*
   727 F.3d 73 (1st Cir. 2013) ...............................................................17

*Aung Doe v. Mullin,*
   No. 26-1294, 2026 WL 2093686 (7th Cir. July 16, 2026) (order) ..........3

*California v. Texas,*
   593 U.S. 659 (2021) ...........................................................................20

*Department of Educ. v. California,*
   145 S. Ct. 966 (2025) .........................................................................10

*Doe #1 v. Trump,*
   944 F.3d 1222 (9th Cir. 2019) ...........................................................15

*Doe v. Mullin,*
   No. 26-1294 (7th Cir. 2026) (order) ...................................... 18, passim

iii

*Fideicomisco De La Tierra Del Cano Martin Pena v. Fortuno,*
  582 F.3d 131 (1st Cir. 2009) ........................................................ 5, 22

*Gill v. Whitford,*
  585 U.S. 48 (2018).................................................................................20

*INS v. Legalization Assist. Project,*
  510 U.S. 1301 (1993).............................................................................23

*Make the Road New York v. Noem,*
  2025 WL 3563313 (D.C. Cir. 2025).....................................................12

*Maryland v. King,*
  567 U.S. 1301 (2012)..............................................................................23

*Mullin v. Doe,*
  609 U.S. —, 2026 WL 1825840 (U.S. 2026)............................. 2, passim

*National Park Conservation Ass'n v. Dep't of Interior,*
  178 F.4th 805 (1st Cir. 2026).............................................................14

*National Park Conservation Ass'n v. Dep't of Interior,*
  — F.4th —, 2026 WL 1904849 (1st Cir. July 2, 2026) .......... 11, passim

*National TPS Alliance v. Mullin,*
  No. 26-199 (9th Cir. July 14, 2026) (order) ...........................................3

*National TPS Alliance v. Noem,*
  150 F.4th 1000 (9th Cir. 2025) ........................................................12

*NIH v. Amer. Pub. Health Ass'n,*
  145 S. Ct. 2658 (2025)....................................................................24

*Nken v. Holder,*
   556 U.S. 418 (2009)…………………………………………….…4, passim

*Noem v. Nat'l TPS All.,*
  146 S. Ct. 23 (2025).................................................................23

iv

*Noem v. National TPS Alliance,*
  145 S. Ct. 2728 (2025).................................................................. 13, 23

*Noor Doe v. Noem,*
  2026 WL 2085662 (S.D.N.Y. 2026)............................................. 3, 4, 18

*Penn. Bureau of Corr. v. U.S. Marshals Service,*
  474 U.S. 34 (1985)............................................................................21

*Rhode Island State Council of Churches v. Rollins,*
  158 F.4th 304 (1st Cir. 2025)..........................................................10

*Rossello-Gonzalez v. Calderon-Serra,*
  398 F.3d 1 (1st Cir. 2004) .........................................................22, 24

*Sampson v. Murray,*
  415 U.S. 61 (1974)...........................................................................11

*Trump v. CASA, Inc.,*
  606 U.S. 831 (2025)................................................................... 19, 20

*United States v. Texas,*
  144 S. Ct. 797 (2024).......................................................... 14, passim

*United States, ex rel. Knauff v. Shaughnessy,*
  338 U.S. 537 (1950)..........................................................................23

*Vicor Corp. v. FII USA, Inc.,*
  132 F.4th 1 (1st Cir. 2025)..............................................................21

*Winter v. NRDC,*
  555 U.S. 7 (2008)................................................................... 4, passim

## <u>STATUTES</u>

**The Immigration and Nationality Act of 1952, as amended:**

5 U.S.C. § 705 ................................................................... 11, 12, 18

8 U.S.C. § 1254a(a) .......................................................................6

8 U.S.C. § 1254a(b)(2) ..................................................................6

8 U.S.C. § 1254a(b)(1)(A) .............................................................6

8 U.S.C. § 1254a(b)(1)(C) .............................................................6

8 U.S.C. § 1254(a)(b)(3)(A) ...........................................................6

8 U.S.C. § 1254(a)(b)(3)(B) ...........................................................6

8 U.S.C. § 1254a(b)(5)(A) ............................................................21

28 U.S.C. § 1253 .........................................................................11

28 U.S.C. § 1292(a)(1) ........................................................ 9, passim

28 U.S.C. § 1651 .........................................................................21

## <u>RULES</u>

Fed. R. Civ. P. 65(b)(2) ...............................................................16

## <u>FEDERAL REGISTER NOTICE</u>

*Termination of Designation of Somalia for*
 *TPS*, 91 Fed. Reg. 1,547 (Jan. 14, 2026) ..........................................7, 8

## INTRODUCTION

This case is a challenge to the termination of a Temporary Protected Status ("TPS") designation for Somalia. In January 2026, the Secretary of Homeland Security conducted a periodic review of Somalia's TPS designation and concluded that the country no longer met the conditions for TPS designation. Accordingly, the Secretary slated the TPS designation to terminate, effective March 17, 2026. Plaintiffs, several individual TPS holders and organizations, sued on March 9, 2026, pressing claims that the termination decision was procedurally invalid and violated the constitutional guarantee of equal protection.

The district court has never determined that Plaintiffs are likely to succeed on their claims, but for months it has prevented the Secretary's decision from taking effect anyway. Before the government even appeared in the case, the district court entered what it termed an administrative stay—an order courts put in place to briefly maintain the status quo until it is possible to rule on the merits. But the district court's order remained in place from March 13 until just after the close of briefing on interim relief, when the case was placed in abeyance on May 1

1

pending the Supreme Court's decision in two materially indistinguishable cases.

By placing the case in abeyance, the district court implicitly recognized that the Supreme Court's decision in *Mullin v. Doe*, No. 25-1083, 609 U.S. —, 2026 WL 1825840 (U.S. June 25, 2026), was likely to control the outcome of the case. That proved to be true. Among other holdings, the Supreme Court explicitly held that "the TPS statute's judicial-review bar applies to all non-constitutional claims." *Id.* at *10. It further held that an equal protection claim challenging the termination of Haiti's TPS designation would likely fail on its merits, even if reviewable, because there is a "strong, race-neutral justification" for the termination—a justification that readily maps onto Plaintiffs' Somalia-related claims here. *Id.* at *12. But despite the Supreme Court's June 25 *Doe* decision, the district court has made no effort to conform its "administrative stay" to that binding and controlling precedent.

To the contrary, on July 2, the district court denied the government's motion to lift the administrative stay, instead opting to leave the four-month-old administrative stay in place "until further notice" and ordering supplemental briefing on the effect of the Supreme

2

Court's decision over the course another six weeks (through August 20)—all to get to the district court's very first look at the merits. Dkts. 78, 82.

This state of affairs is intolerable. *Doe*'s upshot is obvious: Plaintiffs' nonconstitutional claims are not subject to judicial review at all, and even if their equal protection claim were reviewable, it would fail on the merits because it seeks to overcome the same "strong, race-neutral justification" the Supreme Court found decisive in *Doe. Id.*; *see Noor Doe v. Noem*, Nos. 26-cv-2103, 26-cv-2280, 2026 WL 2085662, at *2 (S.D.N.Y. July 20, 2026) (finding the Supreme Court's equal protection analysis indistinguishable). The government explained as much to the district court less than a week after the Supreme Court ruled. *See* Dkt. 77.

Reflecting the dispositive nature of *Doe*, two courts of appeals have already summarily reversed TPS appeals pending before them. *Aung Doe v. Mullin*, No. 26-1294, 2026 WL 2093686, *2 (7th Cir. July 16, 2026) ("the motion for summary reversal is GRANTED."); *National TPS Alliance v. Mullin*, No. 26-199 (9th Cir. July 14, 2026) (summary reversal order). And another district court has granted the government relief from the § 705 order the district court entered before the Supreme Court's decision and indicated that it will dissolve the order should the court of

appeals remand. Order, *Noor Doe*, 2026 WL 2085662 at *2 (granting government's stay motion with respect to Yemen's TPS termination). For its part, this Court is entertaining highly expedited motions to summarily reverse in two pending TPS appeals, having given the parties six days to file their opposition briefs and three days to file reply briefs. *See* Order, *African Cmties. Together v. Mullin*, No. 26-1376 (1st Cir. July 16, 2026); Order, *African Cmties. Together v. Mullin*, No. 26-1254 (1st Cir. July 16, 2026).

The upshot of *Doe* is inescapable: Plaintiffs cannot even conceivably demonstrate that they are "likely to succeed on the merits," *Winter v. NRDC*, 555 U.S. 7, 20 (2008)—as would be required to obtain a preliminary injunction or section 705 stay. *See also Nken v. Holder*, 556 U.S. 418, 434-35 (2009). Rather than addressing the likelihood of success on the merits, the district court has instead avoided any analysis of the merits entirely. Even assuming that such an approach was ever tenable, it is indefensible now after *Doe*.

Following that binding Supreme Court decision, there simply is no viable legal reason for prolonging an administrative stay. And just as a district court cannot prevent a party from appealing a temporary

4

restraining order that has dragged on for far too long simply by keeping that label and refusing to convert it to a preliminary injunction, so a district court cannot evade review by indefinitely prolonging an administrative stay.

This Court should summarily reverse and vacate the district court's still-unreasoned administrative stay. The stay has lasted far longer than is permissible for such an order. Permitting it to remain in place for still longer would indulge form over function, impermissibly leave an administrative stay in place for far longer than necessary to evaluate the merits of Plaintiffs' § 705 motion, and permit easy evasion of the requirement to assess the *Winter/Nken* factors before granting equitable relief. And to the extent the Court has any doubts about the appealability of the order continuing the administrative stay "until further notice," the Court should instead grant the government relief via a writ of mandamus directing the district court to dissolve the administrative stay and move promptly to rule on the fully briefed motion for interim relief. A "district court may not deprive a party of judicial review by declining to rule." *Fideicomisco De La Tierra Del Cano Martin Pena v. Fortuno*, 582 F.3d 131, 134 (1st Cir. 2009) (*Fortuno*). Indeed, this Court's mandamus

authority is designed to address questions about the limits of judicial power where the risk of harm to the applicants is, as here, irreparable.

However the Court exercises its jurisdiction, summary reversal or dissolution of the district court's unreasoned and months-long stay of the Secretary's TPS termination is warranted. The government requests that the Court rule on this request by August 6, 2026, to facilitate further review if necessary and authorized.

## BACKGROUND

The Secretary, "after consultation with appropriate agencies[,]" may designate a country for TPS for three specified bases. 8 U.S.C. § 1254a(b)(1)(A)-(C). Aliens covered by TPS are eligible for work authorization and may not be removed. § 1254a(a). Initial TPS designations are discretionary, and the Secretary must periodically review whether the conditions underlying a TPS designation continue to be met. § 1254a(b)(2), (b)(3)(A). If the Secretary determines that the foreign state "no longer continues to meet the conditions for designation," the Secretary "shall terminate the designation." § 1254a(b)(3)(B).

"There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a

designation, of a foreign state under this subsection." § 1254a(b)(5)(A). At minimum, that bar "applies to all non-constitutional claims." *Doe*, 2026 WL 1825840, at *10.

Somalia was first designated for TPS in 1991 based on extraordinary and temporary conditions. *Termination of Designation of Somalia for TPS*, 91 Fed. Reg. 1,547 (Jan. 14, 2026). It has been extended and occasionally redesignated ever since. *Id.* at 1,547-48. In January 2026, the Secretary reviewed the designations, determined that the basis for designation no longer prevented the safe return of aliens, and terminated TPS for approximately 1,082 beneficiaries. *Id.* at 1,552. The TPS termination was slated to take effect on March 17. *Id.* at 1,547.

Rather than filing suit promptly after the January termination, Plaintiffs waited until 8 days before the termination was set to take effect to do so. On March 9, Plaintiffs (four individuals and two organizations representing an unspecified number of Somali TPS beneficiaries) sued, raising several nonconstitutional challenges to the termination of Somalia's TPS designation and arguing that the Secretary violated the Constitution's guarantee of equal protection by targeting "non-white"

7

TPS beneficiaries. Compl. ¶¶13-47. Plaintiffs' complaint also requested class certification under Rule 23. *Id.* at ¶¶247-61.

On March 13, the district court entered an "administrative stay" providing that the "termination of Somalia's TPS designation ... is HEREBY stayed" and "shall be null, void, and of no legal effect." Dkt. 33. That order did not contain any analysis of Plaintiffs' likelihood of success on their claims and was entered before the government even entered an appearance (let alone had filed a response). The administrative record was filed on April 1, and the stay motion was fully briefed on April 24. Dkt. 42, 64.

In the interim, on March 16, the Supreme Court granted certiorari in two cases pressing challenges substantially identical to Plaintiffs' with respect to the termination of TPS designations for Haiti and Syria. After the motion was fully briefed, the district court solicited the parties' positions on whether the litigation should be held in abeyance until the Supreme Court's decision issued. Neither party opposed an abeyance, and the district court then stayed the litigation pending the Supreme Court's decision. Dkts. 70-73.

8

After the Supreme Court held that the TPS statute bars all non-constitutional challenges and that the Haiti plaintiffs' equal-protection challenge failed, the government moved to dissolve the administrative stay, explaining that the Supreme Court's decision straightforwardly controls. Dkt. 77. The district court declined to do so. Instead, the court ruled that the administrative stay would remain in effect "until further notice," and simultaneously established a supplemental briefing schedule ending on August 20. Dkts. 78, 82. Its order once again did not offer any analysis of Plaintiffs' likelihood of prevailing on the merits.

On July 20, the government appealed the district court's refusal to modify or dissolve its order.

## APPELLATE JURISDICTION

This Court's jurisdiction extends to "[i]nterlocutory orders of the district courts," including orders "refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). Although § 1292(a)(1) refers to "injunctions," the grant of jurisdiction applies to orders that are not strictly labeled as injunctions. Instead, courts permit appeals of orders that are labeled as stays, temporary restraining orders that last more than their allotted 28 cumulative days, and various other orders. *Abbott*

*v. Perez*, 585 U.S. at 595; *see Department of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (staying order styled as a TRO because it "carries many of the hallmarks of a preliminary injunction"); *Rhode Island State Council of Churches v. Rollins*, 158 F.4th 304, 311 (1st Cir. 2025) (interlocutory appeal of TRO). Rather than permitting district courts to control the existence of appellate jurisdiction merely "by avoiding the label 'injunction,'" "where an order has the 'practical effect' of granting or denying an injunction, it should be treated as such for purposes of appellate jurisdiction." *Abbott*, 585 U.S. at 594-95 (cleaned up). Regardless of the order's label, if relief amounting to "an interlocutory injunction is improperly granted or denied, much harm can occur before the final decision in the district court," and immediate appellate intervention is warranted because "[l]awful and important conduct may be barred, and unlawful and harmful conduct may be allowed to continue." *Id.*

An order has the practical effect of an injunction when it changes an actor's behavior and failure to comply with it would carry serious consequences. Thus, for example, in *Abbott*, the district court's orders "were effectively injunctions in that they barred [the defendant] from

10

using" its existing redistricting plans "to conduct this year's elections," even though the orders were not directed at any party and did not formally prescribe or proscribe any particular conduct. 585 U.S. at 594. Similarly, the Supreme Court has long allowed appeals under its analogous jurisdictional statute, 28 U.S.C. § 1253, "from orders ... not cast in injunctive language but which by their terms simply 'set aside'" agency actions. *Aberdeen & Rockfish R.R. Co. v. Students Challenging Regulatory Agency Procedures*, 422 U.S. 289, 307, 308 n.11 (1975) (collecting cases). And in *Sampson v. Murray*, the Supreme Court reviewed an order denominated as a stay and held that the order, which required the government to retain an employee "in the position from which she was dismissed" was immediately appealable because it "served to provide the most extensive relief which she might conceivably obtain from the agency after its review on the merits." 415 U.S. 61, 74 (1974).

Applying the same logic, this Court and others have exercised jurisdiction under § 1292(a)(1) to review district court postponement orders issued under 5 U.S.C. § 705, including those that blocking TPS terminations from taking effect. *See National Park Conservation Ass'n v. Dep't of Interior*, — F.4th —, 2026 WL 1904849 at *1-5 (1st Cir. July 2,

11

2026) (reviewing and staying district § 705 order); *see, e.g.*, *National TPS Alliance v. Noem*, 150 F.4th 1000, 1014-15 (9th Cir. 2025) (§ 705 stay of TPS termination was immediately appealable); *Make the Road New York v. Noem*, No. 25-5320, 2025 WL 3563313, *11 (D.C. Cir. Nov. 22, 2025) (assuming that the "practical effects" test is satisfied for a TPS postponement order under § 705 and collecting cases).

The district court's so-called administrative stay has now controlled the status quo, on a universal basis, for four months, and it extends indefinitely into the future—with briefing set to last through August 20 and no promise of prompt decision following its completion. That is far longer than any non-appealable temporary restraining order could last—even if the two months the case was held in abeyance were subtracted out. The administrative stay exceeded the possible length of a non-appealable TRO before the abeyance, and it will have been in effect for at least *another* six weeks before the district court's supplemental briefing schedule ends. In practical effect, it is wholly indistinguishable from a preliminary injunction or a postponement order under 5 U.S.C. § 705. The district court's order refusing to dissolve the so-called administrative stay is thus subject to interlocutory appeal.

12

Finally, all other potential factors support this Court's exercise of jurisdiction under 28 U.S.C. § 1292(a)(1). There is no dispute that the district court refused to dissolve its order following full adversarial briefing and a complete administrative record, just as it would for a preliminary injunction. And, as the Supreme Court's TPS decisions confirm, the government has strong arguments for challenging the district court's order. *See Doe*, 2026 WL 1825840 at *10-13; *Noem v. National TPS Alliance*, 145 S. Ct. 2728, 2729 (2025) (staying interlocutory order blocking Venezuela's TPS termination).

Last, to the extent the Court has any lingering doubts about its appellate jurisdiction, it should simply treat this motion as a mandamus petition, as explained below.

## ARGUMENT

The Court should promptly afford the government relief from the district court's indefinite, unreasoned alteration of the status quo by summarily reversing the order refusing to dissolve the administrative stay. That order is devoid of any analysis of the merits and is inconsistent with binding Supreme Court authority. In the alternative, the Court

13

should grant a writ of mandamus directing the district court to dissolve the administrative stay.

## I.    This Court Should Summarily Reverse And Vacate The District Court's Unreasoned Interlocutory Order Blocking The Secretary's TPS Termination.

In the TPS statute, Congress made the Secretary's TPS determinations largely unreviewable. *See* § 1254a(b)(5)(A); *Doe*, 2026 WL 1825840, at *10. Congress's general prohibition on exercising judicial review is wholly incompatible with the district court's attempt to supplant the Secretary's determination in a prolonged merits-agnostic manner. The Court should summarily reverse and vacate the district court's interlocutory order.

"An administrative stay is supposed to be a short-lived prelude to the main event: a ruling on the motion for a stay." *United States v. Texas*, 144 S. Ct. 797, 799 (2024) (Barrett, J., concurring). A court issuing an administrative stay must act on the underlying stay request "promptly." *National Park Conservation Ass'n v. Dep't of Interior*, 178 F.4th 805, 806 (1st Cir. 2026). "Once the court is equipped to rule, [the court's] obligation to apply the *Nken* factors is triggered"—that is, the court may maintain interim relief only if it reaches a reasoned conclusion that the moving

party is likely to succeed on the merits and the other non-merits stay factors favor it. *Texas*, 144 S. Ct. at 799 (Barrett, J.).

The district court's unreasoned five-month long "administrative" stay order cannot stand. An administrative stay "reflects a first-blush judgment about the relative consequences" of staying an action "versus allowing it to go into effect." *Id.* at 798. It "is only intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits, and does not constitute in any way a decision as to the merits of the motion for stay pending appeal." *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019) (order).

This Court has consistently held that once an administrative stay is issued, a court must "promptly" adjudicate the underlying application for injunctive relief. *National Park Conservation Ass'n*, 178 F.4th at 806. This Court, for example, has issued a published order addressing a stay pending appeal ten days after issuing administrative stay. *See National Park Conservation Ass'n*, 2026 WL 1904849, at *1-2.

After *Doe*, the district court plainly violated those principles by continuing an administrative stay that has persisted for far longer than needed to reach a reasoned conclusion on the Plaintiffs' motion for

15

interim relief, particularly with the benefit of the Supreme Court's decision. By August 20, when the briefing schedule concludes, the order will have been in effect for over five months—and there is no guarantee that the district court will rule soon after that. Even excluding the time the case was held in abeyance—specifically to obtain the benefit of a Supreme Court decision that straightforwardly resolves Plaintiffs' claims in this case—that time will amount to multiples of the permissible length of a temporary restraining order. *See* Fed. R. Civ. P. 65(b)(2) (limiting TROs to 14 days unless extended to 28 days "for good cause" based on "reasons" "entered in the record"). The order far surpasses the Fifth Circuit's "troubling habit of leaving 'administrative' stays in place for weeks if not months." *Id*. at 803 n.* (Sotomayor, J., dissenting).

The district court's delay has thus enabled it to countermand the Secretary's statutory authority—effectively replacing the Secretary's *termination* determination with a TPS *extension*. It does not take months to realize that the Supreme Court's decision directly controls Plaintiffs' claims. The district court's administrative stay has already endured for far longer than necessary to resolve Plaintiffs' motion for interim relief, and it threatens to persist for far longer still. This Court should

16

summarily vacate the district court's administrative stay and direct it to "promptly" adjudicate Plaintiffs' underlying § 705 motion. *National Park Conservation Ass'n*, 178 F.4th at 806; *see Texas*, 144 S. Ct. at 799.

Stretching an administrative stay out for too long creates other doctrinal problems that the current status quo makes glaringly obvious: It amounts to a grant of interim relief without considering the *Winter/Nken* factors the Supreme Court requires lower courts to consider, and it extends relief universally without any apparent equitable pedigree.

Start with *Nken*. "Once the court is equipped to rule, its obligation to apply the *Nken* factors is triggered." *Texas*, 144 S. Ct. at 799; *see also id*. at 805 (Kagan, J., dissenting) (applying *Nken* factors to application to vacate administrative stay). Plaintiffs' postponement motion was fully briefed on April 24. Dkts. 3, 43, 49, 55, 64. By that juncture, the district court also had the administrative record, the "focal point of APA review." *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013); Dkt. 42. It had even received two amicus briefs. Dkt. 47, 53. And after the Supreme Court ruled, the government promptly explained why the Supreme Court's

17

decision controls Plaintiffs' claims. Dkt. 77. *Even Plaintiffs* agree that their nonconstitutional claims are squarely foreclosed. Dkt. 79.

With all of that briefing before it, the district court was obligated to apply *Winter/Nken* to evaluate whether postponement under 5 U.S.C. § 705 was warranted. *See Texas*, 144 S. Ct. at 799; *National Parks Conservation Ass'n*, 2026 WL 1904849, at *3. Absent that limitation, nothing would prevent district courts from prolonging so-called administrative stays for as long as they wish, defying the requirement to consider and evaluate the *Winter/Nken* factors *before* granting interim relief. It is surpassingly clear that the district court has enough information to rule. Indeed, two courts of appeals have *already* summarily reversed interlocutory district court orders blocking TPS terminations. *See Aung Doe*, 2026 WL 2093686, at *2 ("the motion for summary reversal is GRANTED."); *National TPS Alliance*, No. 26-199 (9th Cir. July 14, 2026) (summary reversal order). And another district court has granted the government relief from the § 705 order the district court entered before the Supreme Court's decision. Order, *Noor Doe*, 2026 WL 2085662, at *2-3 (permitting Yemen's TPS termination to take effect).

18

These post-*Doe* decisions make plain what was already obvious from *Doe* itself: Plaintiffs are unlikely to prevail on their claims. Their non-constitutional claims are unambiguously barred under *Doe*. And even if their constitutional equal-protection claims were not barred (they are, but the Supreme Court did not reach that question), there is no serious contention that Plaintiffs' Somalia-specific evidence can succeed where the Haiti-specific evidence in *Doe* did not. Just as in *Doe*, there is a "strong, race-neutral explanation" for the evidence on which Plaintiffs' rely: "the present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies." *Doe*, 2026 WL 1825840, at *12. After *Doe*, the district court's actions now stand in patent defiance of both Congress's explicit review bar and the Supreme Court's *Doe* decision—not to mention the Executive's authority to set TPS policy.

An indefinite administrative stay also raises serious questions under *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), which ended the practice of indiscriminately entering relief to parties and nonparties alike. Under settled constitutional and equitable principles, a court may not issue relief that is broader than necessary to remedy actual harm

19

shown by specific plaintiffs. *Gill v. Whitford*, 585 U.S. 48, 73 (2018). A valid remedy "operate[s] with respect to specific parties," not with respect to a law "in the abstract." *California v. Texas*, 593 U.S. 659, 672 (2021) (cleaned up). Universal injunctions are unlawful because that relief was unavailable at the founding and "falls outside the bounds of a federal court's equitable authority under the Judiciary Act [of 1789]." *CASA*, 145 S. Ct. at 2554.

Yet the district court's so-called administrative stay is apparently functioning as a universal injunction. Courts have sometimes concluded that the APA permits universal remedies that the Judiciary Act does not, but Plaintiffs and the Court have offered no doctrinal foundation that could permit an indefinite administrative stay extending to non-parties. The district court has not certified a class under Rule 23, and a universal, months-long "administrative" stay falls outside both the scope of its equitable powers and any conceivable justification for an administrative stay. *See CASA*, 145 S. Ct. at 2554; *Texas*, 144 S. Ct. at 798 n.1 (discussing possible sources of authority for administrative stays).

Providing durable relief to non-parties can hardly be justified as a docket-management tool. Nor can it be justified as an exercise of the All

Writs Act (28 U.S.C. § 1651), because courts cannot simply turn to the All Writs Act "whenever compliance with statutory procedures appears inconvenient or less appropriate." *Penn. Bureau of Corr. v. U.S. Marshals Service*, 474 U.S. 34, 43 (1985). Nor can it "restore authority that Congress has expressly foreclosed" through the bar on judicial review of TPS terminations. *Vicor Corp. v. FII USA, Inc.*, 132 F.4th 1, 9 (1st Cir. 2025); *see* 8 U.S.C. § 1254a(b)(5)(A). No reasoned judicial analysis could, for example, make Plaintiffs' non-constitutional claims reviewable post-*Doe*. And substituting merits-free rulings for analysis of likely success on the merits for months is not a permissible alternative.

Thus, this Court should summarily reverse. Whatever may be unclear about the law governing administrative stays, it is entirely plain that a district court may not effectively grant interim relief, lasting for months, under the guise of an administrative stay in order to avoid applying plainly controlling Supreme Court precedent. It does not take months to conclude that Plaintiffs' claims are squarely foreclosed, and the district court's continued, unreasoned interference with determinations that Congress expressly reserved to the Executive Branch is wholly unjustified.

## II.   Mandamus Is Another Appropriate Tool To Correct The District Court's Errors.

Although the Court has exercised its appellate jurisdiction under 28 U.S.C. § 1292(a)(1) and should do so here, there is no question that it has mandamus authority to correct the district court's abuses of judicial power. *Fortuno*, 582 F.3d at 134 (explaining that mandamus enables this Court to address a district court's refusal to address a TRO). This Court has explained that mandamus is appropriate in "those rare cases where the issuance (or non-issuance) or an order (1) raises a question about the limits of judicial power, (2) posses a risk of irreparable harm to the appellant, and (3) is plainly erroneous." *Id.* Each of those requirements is satisfied here.

First, the authority of a district court to "administratively" stay agency action for months without any *Nken* analysis and in the teeth of binding Supreme Court precedent "concerns the boundaries of the District Court's power." *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 10 (1st Cir. 2004) (declining to issue a writ of mandamus because this Court expeditiously reversed the district court instead).

Second, the government is irreparably harmed by the district court's order.  That order injures the Executive and the public interest by

22

supplanting the Secretary's discretion-laden judgment about whether to terminate TPS for Somalia. *See Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025) (granting the government a stay pending appeal of order blocking TPS termination); *Noem*, 145 S. Ct. at 2729 (same); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (noting that the government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people."). That injury is especially acute here because rules and policies governing immigration "implement[] an inherent executive power." *United States, ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). The district court's order "is not merely an erroneous adjudication of a lawsuit between private litigants, but an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assist. Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers) (granting a stay). Indeed, because of the time-sensitive nature of TPS designations, the district court's order effectively commandeers the Secretary's authority and compels a TPS *extension*—lost time in the government's enforcement of the immigration laws "cannot be recouped" and is "thus irrevocably expended,"

23

underscoring the *irreparable* nature of the harm to the government. *NIH v. Amer. Pub. Health Ass'n,* 145 S. Ct. 2658, 2659 (2025) (explaining that order requiring the expenditure of funds imposes irreparable harm on the government).

Finally, the district court's order is plainly erroneous for all the reasons articulated above: An administrative stay is no license to delay, ignore the *Winter/Nken* factors, or grant merits relief to non-parties. *Supra* Argument § I.

Because the district court has wielded its "administrative" stay far beyond the limits of its judicial power, mandamus is warranted here. *See Rossello-Gonzalez*, 398 F.3d at 10 ("the case for mandamus is particularly compelling where the order poses an elemental question of judicial authority."); *see also Texas*, 144 S. Ct. at 799.

## CONCLUSION

The Court should summarily reverse and vacate the district court's order refusing to dissolve its administrative stay (Dkt. 78). In the alternative, the Court should grant a writ of mandamus directing the district court to dissolve its administrative stay.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH WELCH
*Senior Counsel to the Assistant Attorney General*

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
*Trial Attorney* (1st Cir. No. 1197225)
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4404
Email: Jeffrey.M.Hartman@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 27(d)(1), I certify that the text of this motion is in double-spaced, proportionally spaced 14-point Century Schoolbook type, and the motion contains 4,677 words.

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the CM/ECF system and that service will be accomplished via the CM/ECF system.

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation

26

# EXHIBIT A

**Administrative Stay Order**
**Dkt. 33, *African Communities Together, et al. v. Mullin, et al.*,**
**1:26-cv-11201 (D. Mass. Mar. 13, 2026)**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AFRICAN COMMUNITIES TOGETHER, PARTNERSHIP FOR THE ADVANCEMENT OF NEW AMERICANS, ALEXANDER DOE, MOHAMED DOE, TYSON DOE, and NINA DOE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES OF AMERICA,<br><br>Defendants. | * * * * * * * * * * * * * * * * * * * * * * * * | Civil Action No. 26-cv-11201-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

On January 14, 2026, the Department of Homeland Security published notice that Secretary Noem had concluded that "Somalia no longer continues to meet the conditions for designation for Temporary Protected Status" ("TPS") pursuant to 8 U.S.C. § 1254a, and that the nation's designation for Temporary Protected Status would be terminated following its expiration on March 17, 2026.  Termination of the Designation of Somalia for Temporary Protected Status, 91 Fed. Reg. 1547 (Jan. 14, 2026).  On March 9, 2026, Plaintiffs filed the

instant action, challenging the termination of Somalia's designation for TPS pursuant to the Administrative Procedure Act, [ECF No. 1 ("Compl.") ¶¶ 262–313], and the Constitution, [id. ¶¶ 314–20]. Presently before the Court is Plaintiffs' emergency motion, [ECF No. 3], seeking an administrative stay of the termination of Somalia's TPS designation, production of the certified administrative record, and postponement of the March 17, 2026, effective date of the termination. [Id. at 1–2].

## I.    DISCUSSION

This action was filed fewer than ten days before the termination of Somalia's TPS designation is scheduled to take effect. As of the entry of this Order, Defendants have not appeared in the action, produced the certified administrative record on which the Court must rely in deciding the merits, see Atieh v. Riordan, 727 F.3d 73, 77 (1st Cir. 2013), or filed a brief setting forth their position on Plaintiffs' emergency motion. The Court notes that the consequences of either granting or denying Plaintiffs' motion to postpone the effective date of the termination would be weighty: Plaintiffs aver that if Somalia's TPS designation is allowed to terminate, over one thousand people will face "a myriad of grave risks," including detention and deportation, physical violence if removed to Somalia, and forced separation from family members. [Compl. ¶¶ 9–10]. On the other hand, if the Court postpones the effective date of a decision committed to the executive branch by Congress, see 8 U.S.C. § 1254a(b)(3)(B), it risks harmful interference with its coordinate branches of government. See Trump v. CASA, Inc., 606 U.S. 831, 861 (2025).

In similar situations, other district courts have used administrative stays "to permit time for briefing and deliberation," United States v. Texas, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring) (discussing purpose of appellate-court administrative stays of lower-court decisions).

2

See, e.g., Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget, 763 F. Supp. 3d 13, 17 (D.D.C. 2025) (collecting cases).  Such stays reflect a "first-blush judgment about the relative consequences of staying the [agency action] versus allowing it to go into effect."  United States v. Texas, 144 S. Ct. at 798 (Barrett, J., concurring).  On the record now before it, the Court concludes that those relative consequences favor an administrative stay to permit Defendants to produce the certified administrative record and the parties to brief the issues presented by Plaintiffs' emergency motion.

In light of the serious interests on both sides, the Court will require the parties to establish and comply with a prompt briefing schedule with the goal of resolving Plaintiffs' emergency motion for preliminary relief as quickly as possible.

## II.      CONCLUSION

For the foregoing reasons, Plaintiffs' emergency motion, [ECF No. 3], is **GRANTED IN PART**.  The Court will implement an administrative stay and defer ruling on postponement until the administrative record has been produced and the parties have fully briefed the issues presented.  The March 17, 2026, effective date of the termination of Somalia's TPS designation, published at 91 Fed. Reg. 1547, is hereby **STAYED** subject to further order of the Court.  While the stay is in effect, the termination shall be null, void, and of no legal effect.  Individuals with TPS status based on Somalia's designation shall retain all rights and protections afforded by TPS status, including eligibility for work authorization and protection against deportation and detention based on TPS status, and individuals with pending TPS applications based on Somalia's designation shall retain all rights and protections afforded to persons with pending TPS applications, including eligibility for work authorization and protection against deportation based on a pending TPS application.

Plaintiffs are **<u>ORDERED</u>** to serve a copy of this Order, along with the summons and complaint, on Defendants by **<u>5:00 p.m. EDT</u>** on **<u>March 16, 2026</u>**, if they have not already done so. The parties are instructed to confer to establish a schedule for briefing and production of the administrative record and file such schedule with the Court by no later than **<u>5:00 p.m. EDT</u>** on **<u>March 18, 2026</u>**.

       **SO ORDERED.**

March 13, 2026

                                    */s/ Allison D. Burroughs*
                                    ALLISON D. BURROUGHS
                                    U.S. DISTRICT JUDGE

# EXHIBIT B

**Government Motion to Lift Abeyance and Stay
Dkt. 77, *African Communities Together, et al. v. Mullin, et al.*,
1:26-cv-11201 (D. Mass. July 1, 2026)**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AFRICAN COMMUNITIES TOGETHER, et al.,

                  Plaintiffs,

      v.

MARKWAYNE MULLIN, *in his official capacity as Secretary of Homeland Security*, et al.,

                  Defendants.

Case No. 26-cv-11201-ADB

## **DEFENDANTS' MOTION TO LIFT ABEYANCE AND LIFT ADMINISTRATIVE STAY**

This case was held in abeyance pending the Supreme Court's ruling in two consolidated cases involving the same statutory review bar, 8 U.S.C. § 1254a(b)(5)(A), and the same type of challenged government action—namely, the termination of a country's Temporary Protected Status ("TPS") designation—at issue in this case. The Supreme Court has now issued that ruling, which clearly and conclusively holds that § 1254a(b)(5)(A) "applies to all non-constitutional claims," and makes clear that equal protection claims of the type asserted in this case are unlikely to succeed on the merits. *Mullin v. Doe*, No. 25–1083, 2026 WL 1825840 at *10, *13 (U.S. June 25, 2026). Having received this decision, there is no longer any sound basis or plausible need to keep holding this matter in abeyance and delaying resolution of the case. The Supreme Court's decision similarly warrants immediately lifting the administrative stay, which this Court issued more than three months ago based on its "first-blush judgment" that the "relative consequences" of pausing the termination of Somalia's TPS designation versus allowing it to go into effect favored an administrative stay pending resolution of Plaintiffs' § 705 motion. Doc. No. 33 at 3 (citation omitted). The Court now has more than sufficient direction to promptly rule on and deny

Plaintiffs' motion in light of the Supreme Court's decision, which in all events shows that interim relief pausing the Secretary's TPS determinations—including by virtue of an administrative stay—is inappropriate. Thus, to promote the efficient litigation of this matter, adhere to the Supreme Court's recent decision, and for the reasons further explained below, the Court should lift the abeyance and administrative stay forthwith.

Moreover, the Supreme Court's ruling clearly establishes that this Court lacks authority to adjudicate Counts One through Six of Plaintiffs' Complaint, each of which alleges a non-constitutional violation of the Administrative Procedure Act ("APA"). The Supreme Court also determined that the plaintiffs in one of the consolidated cases – *Trump v. Miot,* No. 25-1084, 2026 WL 1825849 at **11-13 – are unlikely to succeed on their claim of a violation of the constitutional right to equal protection and therefore are not entitled to interim relief. The claims in *Miot* are similar to those advanced by Plaintiffs here. *See* Doc. No. 1 at 91-94 (Counts Seven and Eight). Accordingly, given that Plaintiffs are unlikely to succeed on any of their claims, the Court should lift the administrative stay.

## BACKGROUND

On March 9, 2026, Plaintiffs filed an emergency motion pursuant to 5 U.S.C. § 705 seeking an administrative stay, and ultimately postponement, of the termination of Somalia's TPS designation, which otherwise would have taken effect at 11:59 p.m. on March 17, 2026. Doc. No. 3. On March 13, 2026, the Court issued an order implementing an administrative stay and deferring ruling on the postponement motion until the administrative record had been produced and the parties had fully briefed the issues presented. Doc. No. 33. On April 1, 2026, Defendants produced the administrative record, Doc. No. 42, and the parties thereafter engaged in further briefing. Doc. Nos. 43, 55, 64. On April 29, 2026, the Court entered an order requiring the parties

to advise the Court by noon on May 1, 2026, whether they opposed staying the litigation pending a decision by the Supreme Court in *Mullin v. Doe,* No. 25-1083, and *Trump v. Miot,* No. 25-1084. Both parties advised the Court that they did not oppose the stay. *See* Doc. Nos. 71, 72. The Court thereafter stayed this action until the Supreme Court issued a decision in *Doe* and *Miot,* observing that it was doing so partly "in light of the fact that the question at issue in this case 'will, in all likelihood, turn upon [the Supreme Court's decision in a recently argued case]," citing *Marshel v. AFW Fabric Corp.,* 552 F.2d 471, 472 (2d Cir. 1997) (per curiam). Doc. No. 73. The Court ordered that the parties file a joint status report within fourteen days of the Supreme Court's decision, and further ordered that the administrative stay would remain in effect until the Court orders otherwise. *Id.*

On June 25, 2026, the Supreme Court issued its decision in the consolidated cases. *Mullin v. Doe*, No. 25–1083, 2026 WL 1825840 (U.S. June 25, 2026). The Supreme Court first held that "the TPS statute's judicial-review bar," 8 U.S.C. § 1254a(b)(5)(A), "applies to all non-constitutional claims." *Id.* at *10. In so doing, the Supreme Court specifically rejected the argument "that § 1254a(b)(5)(A) applies only to substantive claims, not those based on alleged procedural errors." *Id.* at *8. It similarly rejected the argument that § 1254a(b)(5)(A) applies to "only the Secretary's ultimate 'determination'—not any subsidiary decision, such as whether to consult other agencies." *Id.* at *10.

The Supreme Court also held that the Haitian plaintiffs in *Miot* were unlikely to prevail on their claim that the termination of Haiti's TPS designation violated the constitutional right to equal protection. *Id.* at *11-*13. It assumed without deciding that the claim was subject to judicial review at all, and likewise "assume[d] for the sake of argument that the *Arlington Heights* standard applies" to such a claim and therefore sought to "determine whether a 'discriminatory purpose

3

[was] a motivating factor in the decision' to terminate Haiti's TPS designation." *Id.* at *11 (citing

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977)). It then reviewed the

Haitian plaintiffs' supporting evidence—principally, "statements made by the President and

former Secretary Noem"—and concluded that it was insufficient to show "that race was a

motivating factor in the decision to terminate Haiti's TPS designation." *Id.* at *11-*13. The Court

held that the "present administration's general stance on immigration and its obvious antipathy

toward past administrations' TPS policies" constituted "a strong, race-neutral explanation of these

officials' statements." *Id.* at *12. The Supreme Court therefore held that the Haitian plaintiffs

were "not entitled to interim relief on their equal protection claim," because they were "unlikely

to prove that race was a motivating factor in the decision to terminate Haiti's TPS designation."

*Id.* at *13.

## ARGUMENT

The Court should lift the abeyance and the administrative stay.

**1.** The Court should lift the abeyance forthwith. Although this Court's abeyance order

stayed these proceedings pending "the Supreme Court's ruling in" *Doe* and *Miot* and ordered that

the parties file a joint status report within fourteen days of that event setting forth their positions

on appropriate next steps in the litigation, Doc. No. 73, "[i]n no event does such an order bar a

party from" seeking to lift an abeyance "upon an appropriate application." *Lehman v. Revolution*

*Portfolio LLC*, 166 F.3d 389, 392 (1st Cir. 1999) (citation omitted).[1] Similarly, just as a district

court has "inherent" authority to stay its own proceedings, *Landis v. N. Am. Co.*, 299 U.S. 248,

---

[1] Although *Lehman* addressed an order administratively closing a case, "administratively closing a case 'is the functional equivalent of a stay.'" *Psara Energy, Ltd. v. Advantage Arrow Shipping, LLC*, 946 F.3d 803, 807 (5th Cir. 2020) (citation omitted).

254 (1936), it likewise "retains the authority" to lift the stay "if the circumstances that sparked the [stay] abate." *Lehman*, 166 F.3d at 392; *see also Green v. Cosby*, 177 F. Supp. 3d 673, 681 (D. Mass. 2016) ("the court retains the ability to modify or dissolve the stay").  Here, the circumstances that warranted the abeyance—i.e., waiting for guidance from the Supreme Court—have abated now that the Supreme Court has issued a clear and conclusive decision in *Doe* and *Miot*.  Because there is no persuasive reason to wait any longer, the Court should lift the abeyance.

**2.**  Once the Court lifts the abeyance, Defendants respectfully request that it lift the administrative stay.  An administrative stay ordinarily reflects a court's exercise of its inherent authority "to stay a judgment that it issued" and—in some cases— "the judgment of another court." Rachel Bayefsky, *Administrative Stays: Power and Procedure*, 97 Notre Dame L. Rev. 1941, 1962 (2022).  But even if an administrative stay was a permissible means for a district court to temporarily pause or otherwise restrain Executive agency action, there is no longer any valid justification for maintaining the one entered in this case.  The Court issued the administrative stay more than three months ago, but "an administrative stay is supposed to be a short-lived prelude" to ruling on the motion for interim relief and therefore "should last no longer than necessary to make an intelligent decision on the motion." *United States v. Texas*, 144 S. Ct. 797, 799 (2024) (Barrett, J., concurring).  Moreover, the Court issued the administrative stay based on its initial determination that the "relative consequences" of staying the termination of Somalia's TPS designation versus allowing it to go into effect "favor[ed] an administrative stay to permit Defendants to produce the certified administrative record and the parties to brief the issues presented by Plaintiffs' emergency motion."  Doc. No. 33 at 3.  The Supreme Court's decision in *Doe* and *Miot*, however, has altered the calculus by making clear that Plaintiffs will fail to succeed on their claims in this case.  Plaintiffs cannot succeed on their non-constitutional claims, as the

Court lacks authority to review them.  And Plaintiffs are unlikely to succeed on their equal protection claims, as their supporting evidence and arguments are materially indistinguishable from those that the Supreme Court found unavailing in *Miot*.  Here, just as in *Miot*, the termination has "a strong, race-neutral explanation" that leaves Plaintiffs "unlikely to prove that race was a motivating factor in the decision to terminate [Somalia's] TPS designation."  *Doe*, 2026 WL 1825840, at *12-13.  "[T]he underlying merits" may "influence" the determination whether to grant or deny an administrative stay, *Texas*, 144 S. Ct. at 799 (Barrett, J.), and they plainly warrant lifting the one entered here.

## CONCLUSION

For the foregoing reasons, the Court should lift the abeyance and lift the administrative stay.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated:  July 1, 2026            By:        */s/ Robert E. Richardson*
                                          ROBERT E. RICHARDSON
                                          Assistant United States Attorney
                                          U.S. Attorney's Office
                                          1 Courthouse Way, Ste. 9200
                                          Boston, MA 02210
                                          (617) 748-3247
                                          Robert.richardson@usdoj.gov

## LOCAL RULE 7.1 CERTIFICATION

I certify that I conferred with counsel for Plaintiffs, who oppose this motion.

*/s/ Robert E. Richardson*
ROBERT E. RICHARDSON
Assistant U.S. Attorney

6

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Robert E. Richardson*
ROBERT E. RICHARDSON
Assistant U.S. Attorney

**EXHIBIT C**

**Text-Only Order Declining To Dissolve Administrative Stay Dkt. 78, *African Communities Together, et al. v. Mullin, et al.*, 1:26-cv-11201 (D. Mass. July 2, 2026)**

Judge Allison D. Burroughs: ELECTRONIC ORDER entered. On March 13, 2026, the Court entered an administrative stay of the termination of Somalia's TPS designation to provide time for the government to produce the administrative record and the parties to brief the issues presented in this action. [ECF No. 33 ]. On May 1, 2026, with the agreement of the parties, the Court stayed this litigation until the Supreme Court decided Mullin v. Doe, No. 25-1083, and Trump v. Miot, No. 25-1084. [ECF No. 73 ]. Those cases were decided last week. Mullin v. Doe, Nos. 25-1083, 25-1084, 2026 WL 1825840 (U.S. June 25, 2026). The Court previously ordered the parties to file a joint status report within 14 days of that decision, [ECF No. 73 ], but rather than a joint filing, the government has now moved to lift both the stay of this action and the administrative stay of the underlying TPS termination, [ECF No. 77 ], which Plaintiffs have indicated they will oppose, [id. at 6]. The motion is GRANTED IN PART and DENIED IN PART. The stay of this action is lifted, but the administrative stay will remain in place until further notice to permit the Court to resolve the issues presented by Plaintiffs' emergency motion, [ECF No. 3 ]. As originally ordered, by July 9, the parties shall submit a joint status report stating their respective positions on which counts of the complaint, if any, remain viable in light of the Supreme Court's decision in Mullin v. Doe, Nos. 25-1083, 25-1084, 2026 WL 1825840 (U.S. June 25, 2026), and on appropriate next steps in this action.Finally, Plaintiffs' motion to compel, [ECF No. 65 ], remains unopposed by Defendants. By July 9, Defendants shall also (1) file, ex parte, unredacted copies of each of the disputed documents for the Court to review, and (2) file any opposition to the motion to compel. (CAM) (Entered: 07/02/2026)

29

**EXHIBIT D**

**Joint Status Report**
**Dkt. 79, *African Communities Together, et al. v. Mullin, et al.*,**
**1:26-cv-11201 (D. Mass. July 9, 2026)**

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AFRICAN COMMUNITIES TOGETHER, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, et al., <br><br> *Defendants*. | Civil Action No. 1:26-cv-11201-ADB |

## JOINT STATUS REPORT

Pursuant to the Court's order, ECF No. 73, to hold the proceedings in abeyance and to maintain the administrative stay pending the Supreme Court's ruling in *Mullin v. Dahlia Doe*, No. 25-1083, —S Ct.—, 2026 WL731088 (U.S. Mar. 16, 2026), and *Trump v. Miot*, No. 25-1084, — S. Ct. —, 2026 WL 731087 (U.S. Mar. 16, 2026) (together "consolidated cases"), the Parties respectfully submit this Joint Status Report addressing their respective positions regarding appropriate steps in this litigation, to propose a briefing schedule, and request a new hearing date. In compiling this Joint Status Report, the Parties met and conferred on June 29 and exchanged two draft reports via email.

## I.    BACKGROUND

On January 14, 2026, the Secretary of Homeland Security announced her decision to terminate the TPS designation for Somalia ("Termination"), effective upon the expiration of Somalia's designation on March 17, 2026. Plaintiffs filed this lawsuit to challenge the Secretary's decision, ECF No. 1, and a motion to postpone the TPS termination on March 9, 2026, ECF No. 12. This Court issued an administrative stay of the termination on March 13, 2026, pending a hearing on Plaintiffs' motion scheduled for May 4, 2026. ECF No. 33. Defendants produced the administrative record on April 1, 2026. Plaintiffs challenged redactions made to the administrative record via a motion to compel, filed on April 24, 2026, which remains pending before the Court.[1] ECF No. 65. On July 2, 2026, the Court ordered Defendants to (1) file, ex parte, unredacted copies of each of

---

[1] A motion for leave to proceed under pseudonym, ECF No. 2, also remains pending before the Court.

the disputed documents for the Court to review, and (2) file any opposition to the motion to compel by July 9, 2026. ECF No. 78.

On April 29, 2026, this Court requested the Parties' positions regarding staying the proceedings and postponing the scheduled hearing pending a decision in the consolidated cases. ECF No. 70. The Parties did not oppose a stay of proceedings, and this Court stayed proceedings on May 1, 2026, and further ordered the Parties to submit a Joint Status Report within fourteen days after the Supreme Court issued its decision in *Mullin v. Doe*. ECF No. 73. On July 1, 2026, Defendants filed a motion to lift both the stay of proceedings and the administrative stay given the Supreme Court's June 25, 2026, decision in that case. ECF No. 77. The next day, on July 2, 2026, the Court entered an order granting Defendants' request to lift the stay of the proceedings but denying its request to lift the administrative stay. ECF No. 78. The Court determined that the administrative stay will remain in place to permit the Court to resolve the issues presented by Plaintiffs' emergency motion. *Id.*

## II.     THE IMPACT OF THE SUPREME COURT'S DECISION ON THE PROCEEDINGS

The Supreme Court issued its decision in the consolidated cases on June 25, 2026. *See Mullin v. Doe*, No. 25-1083, 609 U.S. —, 2026 WL 1825840 (U.S. June 25, 2026). The Court held that the Plaintiffs-Appellees' Administrative Procedure Act ("APA") claims were barred by the TPS statute's judicial-review bar, 8 U.S.C. § 1254a(b)(5)(A). 2026 WL 1825840, at *10. On Plaintiffs-Appellees' equal protection claim, the Court assumed it had jurisdiction to review the claim but held that the Plaintiffs-Appellees were not likely to succeed on the merits. *Id.* at *11-13.

The Parties agree on the following regarding the impact of the Supreme Court's decision in the consolidated cases:

1. The TPS statute's judicial-review bar, 8 U.S.C. § 1254a(b)(5)(A), precludes non-constitutional challenges to terminations effectuated under the TPS statute; and
2. The Supreme Court did not resolve the question of whether the TPS statute's judicial-review bar, 8 U.S.C. § 1254a(b)(5)(A), applies to constitutional claims.

### A. <u>PLAINTIFFS' POSITION</u>

As contemplated by this Court's orders, Plaintiffs request supplemental briefing on their claims and the opportunity to amend their pleadings in response to the Supreme Court's decision.

Plaintiffs' constitutional claims—that the Secretary's termination of TPS for Somalia was contrary to a constitutional right under the APA and violated the Fifth Amendment's guarantee of

equal protection under the law—provide a sufficient basis for this Court to postpone the Secretary's termination, and grant Plaintiffs the relief requested in their Complaint.[2]

Plaintiffs are entitled to postponement because the Termination violates the Fifth Amendment's guarantee of equal protection of the laws.

*First*, *Mullin* leaves undisturbed the ability to bring constitutional challenges to terminations of TPS designations. *Mullin*, 2026 WL 1825840, at *10. In *Mullin*, the Supreme Court noted its prior holding in *Webster v. Doe*, 486 U.S. 592 (1988), that a statutory bar on judicial review of agency action does not apply to a plaintiff's constitutional challenge brought under the APA. *Mullin*, 2026 WL 1825840, at *10 (quoting *Webster*, 486 U.S. at 603).

*Second*, Plaintiffs are likely to succeed on the merits of their equal protection claims. The Court assumed that strict scrutiny under *Vill. of Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252 (1977), governs Plaintiffs' discrimination claims. *Mullin*, 2026 WL 1825840, at *11. Under this standard, Plaintiffs must show that "a discriminatory purpose [was] a motivating factor" in the challenged government action. *Arlington Heights*, 429 U.S. at 265-66. This discriminatory purpose need not be the "sole[]," "dominant," nor "primary" motive. *Id.* at 265. And this Court must undertake the "sensitive inquiry" *Arlington Heights* demands. *Id.* at 266.

Contrary to Defendants' arguments in their motion to lift the abeyance and to lift the administrative stay, Plaintiffs' evidence of racial discrimination in this case speaks directly to discrimination against Somali people and the termination of Somalia's TPS designation; it is thus distinct from the evidence considered in *Mullin*. Plaintiffs will further address the Supreme Court's opinion in *Mullin* and why the facts here are distinguishable in their supplemental briefing.

In addition to seeking postponement based on Plaintiffs' claims, Plaintiffs also plan to seek to amend their complaint under Fed. R. Civ. P. 15 to add claims that were not before the Supreme Court and therefore remain outside the Court's holding in the consolidated cases, including a claim that the termination of TPS for Somalia violated Plaintiffs' Fifth Amendment procedural due process rights.

### B. **DEFENDANTS' POSITION**

Plaintiffs are not entitled to postponement based on their claims that the Termination violates the Fifth Amendment's guarantee of equal protection of the laws.

*First,* Plaintiffs are unlikely to succeed on their equal protection claims, as their supporting evidence and arguments are materially indistinguishable from those that the Supreme Court found unavailing in *Miot.* Indeed, in assessing the plaintiffs' equal protection claim in *Miot,* the Supreme Court determined that it did not need to decide whether the deferential test it

---

[2] The sole exception is Plaintiffs' second prayer for relief, which is not tied to the constitutional claims.

used in *Trump v. Hawaii,* 585 U.S. 667 (2018), or the heightened scrutiny test it employed in *Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252 (1977), applied, because even under the heightened standard of *Arlington Heights* the plaintiffs were unlikely to prevail on their equal protection claim. 2026 WL 1825840 at *11-13. The *Miot* plaintiffs relied on comments made by government officials – including President Donald Trump and former Secretary of Homeland Security Kristi Noem – that are materially indistinguishable from those Plaintiffs rely on to support their equal protection claims in this case. *See id.* The Supreme Court's conclusion that "[n]one of the cited statements by either the President or Secretary [were] overtly racial, and in substance all expressed policy views that could rest on race-neutral justifications" describes evidence and statements upon which Plaintiffs seek to rely in this case just as well as the evidence and statements in *Miot. Id.* at *12. And here, just as in *Miot,* the "present administrations' general stance on immigration and its obvious antipathy toward past administrations' TPS policies" constitute "a strong, race-neutral explanation of these officials' statements." *Id.* As such, Plaintiffs will not succeed on their equal protection claims as well.

*Second,* although the Supreme Court did not decide whether the judicial-review bar applies to constitutional claims, § 1254a(b)(5)(A) bars the equal protection claims as well. *See id.* at *13-16 (Thomas, J. concurring) (concluding that the bar's text – "no judicial review" – reaches constitutional claims).

### III.    PARTIES' PROPOSED BRIEFING SCHEDULE

The Parties separately propose schedules for additional briefing and a hearing date for resolution of Plaintiffs' Motion for Postponement, ECF No. 12.

Plaintiffs propose the following schedule, which provides sufficient time for Plaintiffs to file the amended complaint and supplemental postponement motion. This schedule also accommodates counsel's unavailability due to an appellate argument, a class certification hearing, and out-of-office periods which were all previously scheduled during this same period.

- 7/30/2026: Plaintiffs file supplemental briefing that addresses the impact of the Supreme Court's decision and amended pleadings.
- 8/13/2026: Defendants submit supplemental responsive briefing on Plaintiffs' Motion for Postponement.
- The week of 8/24/2026: this matter will be fully briefed and ready for the Court to set a hearing date.

Defendants are seeking a more expedited schedule than Plaintiffs and propose the following schedule with respect to Plaintiffs' Motion for Postponement:

- 7/16/2026: Plaintiffs file supplemental briefing.
- 7/23/2026: Defendants submit supplemental briefing.

## IV.     CONCLUSION

The parties respectfully request that the Court set a schedule for briefing and a hearing on the pending motions.

**EXHIBIT E**

**Text-Only Supplemental Briefing Order**
**Dkt. 82, *African Communities Together, et al. v. Mullin, et al.*,**
**1:26-cv-11201 (D. Mass. July 13, 2026)**

Judge Allison D. Burroughs: ELECTRONIC ORDER entered. The Court appreciates the parties' efforts to reach agreement on the impact of the Supreme Court's decision in Mullin on this action, see [ECF No. 79 at 2], and finds that supplemental briefing on the remaining issues is appropriate. Plaintiffs' supplemental brief is due by July 30, 2026. Defendants' supplemental brief is due by August 13, 2026. Plaintiffs may file a reply within 7 days following the filing of Defendants' brief, but no later than August 20, 2026. Additionally, Defendants' response to Plaintiffs' motion to compel, [ECF No. 80 ], was not accompanied by an ex parte filing of unredacted copies of the disputed documents, as ordered by the Court, [ECF No. 78 ]. Defendants shall file those copies with the Court promptly. (CAM) (Entered: 07/13/2026)

31