**No. 26-1832**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

**AFRICAN COMMUNITIES TOGETHER, et al.**,
Plaintiffs-Appellees,

v.

**MARKWAYNE MULLIN, et al.**,
Defendants-Appellants.

On Appeal from the United States District Court
for the District of Massachusetts
No. 26-cv-11201

**REPLY IN SUPPORT OF MOTION FOR SUMMARY REVERSAL
AND ALTERNATIVE MANDAMUS PETITION**

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH WELCH
*Senior Counsel to the Assistant
Attorney General*

JEFFREY M. HARTMAN
*Trial Attorney*
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin
Station
Washington, D.C. 20044
Phone: (202) 532-4404
Jeffrey.M.Hartman@usdoj.gov

## INTRODUCTION

Under the Supreme Court's decision in *Mullin v. Doe*, 146 S. Ct. 2121 (2026), *all* of Plaintiffs' existing claims are jurisdictionally barred, meritless, or both. The district court's continued maintenance of a months-long administrative stay at this juncture is indefensible—and scarcely defended by Plaintiffs. And while Plaintiffs vaguely allude to efforts to amend their complaint with new claims sometime in the future, they have no basis for any relief *now*, let alone the open-ended, merits-agnostic, and *universal* administrative stay that the district court refused to dissolve. Compliance with Supreme Court authority is not optional, and this Court should summarily correct the district court's errors.

Plaintiffs concede that despite blocking the Secretary's TPS termination for Somalia on a universal basis, for months, the district court has never evaluated whether they are "likely to succeed on the merits," *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Even now, Plaintiffs never even assert that they are likely to succeed on the merits of the claims (Dkt. 1) underlying the March 13 administrative stay. Nor can they: The same organizational plaintiff, represented by the same counsel, has conceded that summary reversal is warranted in the two appeals of

§705 stays of TPS terminations that are pending in this Court. *See* Nos. 26-1254, 26-1376. The Supreme Court's controlling decision in *Doe*, makes clear their claims are doomed on the merits whenever they are ultimately adjudicated.

Further, Plaintiffs do not dispute that the district court—aided by adversarial briefing, a certified administrative record, amicus briefs, and the Supreme Court's decision in *Doe*—is "equipped to rule" and was therefore obligated to apply the *Nken/Winter* factors, as the government requested nearly a month ago. *Texas*, 144 S. Ct. at 799 (Barrett, J.). Under this Court's precedent (which Plaintiffs tellingly never acknowledge), that is clear error: a court issuing an administrative stay must "promptly" act on the underlying stay request. *National Park Conservation Ass'n v. DOI*, 178 F.4th 805, 806 (1st Cir. 2026).

Plaintiffs make matters worse, not better, by arguing that the months-long "administrative" stay remains justified because the court will *eventually* rule on their §705 motion in a "*forthcoming* postponement order" based on a "*forthcoming* amended complaint." Resp. 9 (emphasis added). But courts cannot enter preliminary relief because a plaintiff might, in the future, be able to show in an as-yet-unfiled §705 motion

2

that he is likely to succeed on as-yet-unpleaded claims. Courts decide live cases and controversies, not claims that litigants intend to someday plead. A district judge cannot set nationwide immigration policy based on a claim Plaintiffs *might* someday plead.

Plaintiffs' resort to potential future claims is especially peculiar because the same organizational plaintiff, represented by the same counsel in the same court, has long since filed amended or proposed amended complaints in its two other TPS challenges. So why not here? The only material difference is the district court's willingness to indefinitely refrain from evaluating the merits, relieving Plaintiffs of the need to actually litigate their case.

Worse, that dysfunction threatens to metastasize absent correction from a higher court. In the past week, two more district judges in this circuit issued indefinite administrative stays blocking TPS terminations, without applying the factors governing preliminary relief. Dkt. 106, *African Communities Together v. Mullin*, No. 25-cv-13939-PBS (July 23, 2026) (*ACT I*) (staying South Sudan's TPS termination "pending resolution of Plaintiffs' motion to amend and renewed motion for postponement" immediately upon this Court's mandate in No. 26-1254);

3

Dkt. 82, *African Communities Together v. Noem*, No. 26-cv-10278-BEM (July 25, 2026) (*ACT II*) (similar, for Ethiopia TPS termination). Declining to rein in the administrative stay entered by the court below risks similar abuses by other district judges in analogous cases.

It is improper for district courts to encroach on the Executive's sovereign immigration powers through unexplained and unbound judicial fiat which consciously refuses to apply the governing law. It is particularly difficult to countenance that approach when it is plainly calculated to evade Congress's bar on judicial review of TPS terminations and to thinly conceal defiance of recent, on-point Supreme Court precedent. Nor can district courts evade appellate review by indefinitely refusing to apply the factors governing preliminary relief. Intentional and protracted refusal to apply the governing law is antithetical to the rule of law. This Court should summarily reverse or grant mandamus.

## ARGUMENT

### I.  The District Court Cannot Circumvent Supreme Court Precedent Through An Administrative Stay.

The district court's administrative stay is ripe for summary reversal. "An administrative stay is supposed to be a short-lived prelude to the main event: a ruling on the motion for a stay." *Texas*, 144 S. Ct.

4

at 799 (Barrett, J.). Under this Court's precedent, a court issuing an administrative stay must act on the underlying stay request "promptly." *National Park Conservation*, 178 F.4th at 806; *see, e.g.*, *National Parks Conservation Ass'n v. DOI*, —F.4th —, 2026 WL 1904849 at \*1-3 (1st Cir. July 2, 2026) (ruling on §705 appeal nine days after entering administrative stay). "Once the court is equipped to rule, [the court's] obligation to apply the *Nken* factors is triggered"—that is, the court may maintain interim relief only if it reaches a reasoned conclusion that the moving party is likely to succeed on the merits and the other non-merits stay factors favor it. *Texas*, 144 S. Ct. at 799 (Barrett, J., concurring); *see also id.* at 805 (Kagan, J., dissenting) (applying *Nken* factors to application to vacate administrative stay).

Plaintiffs fail to identify any justification for the district court's refusal to apply *Nken/Winter* or dissolve its administrative stay on July 2. Resp. 11-18. The Supreme Court squarely held that 8 U.S.C. §1254a(b)(5)(A) forecloses Plaintiffs' non-constitutional claims. *Doe*, 146 S. Ct. at 2137; *see* Dkt. 79 (Plaintiffs' concession). And their equal protection arguments, which are materially indistinguishable from those in *Doe*, have been briefed *for months*. Dkts. 3, 33, 43, 47, 49, 53, 55, 64.

5

Plaintiffs agree that the record "has not been evaluated by the district court" and "it is the district court's role to apply *Mullin*." Resp. 13 & n.3. Just so. Particularly after *Doe*, the district court is *required* to "promptly" apply *Nken/Winter* to decide whether Plaintiffs are likely to succeed on their claims. *National Park Conservation*, 178 F.4th at 806. Plaintiffs' defense that the district court is getting around to deciding the §705 motion, because the court established an "expedited" briefing schedule, is wrong and underscores the problem. On a default briefing schedule, briefing would be complete 14 days after filing of a motion for preliminary relief. D. Mass. L.R. 7.1(b)(1). The district court's schedule for *supplemental* briefing, following the Supreme Court's decision, was more than double that default briefing schedule. A district court undoubtedly abuses its "docket-management" discretion when it uses an administrative stay to *slow down* briefing. That is willfully delaying the inevitable, not "promptly" evaluating the request for preliminary relief. *Nat'l Park Conservation*, 178 F.4th at 806.

Plaintiffs' "forthcoming Amended Complaint" provides no justification for the district court's administrative stay. Resp. 9, 13. "[F]ederal courts do not exercise general oversight of the Executive

6

Branch; they resolve cases and controversies consistent with the authority Congress has given them." *Trump v. CASA*, 606 U.S. 831, 861 (2025). Under Article III, an administrative stay can *never* be justified by "forthcoming" claims or motions. *See In re: 2016 Primary Election*, 836 F.3d 584, 588 (6th Cir. 2016). And it goes without saying that an administrative stay based on Plaintiffs' *future* claims does nothing to "manage" the district court's *existing* docket. Nor can setting nationwide immigration policy, for months on end, remotely be described or justified as mere docket-management.

Indeed, Plaintiffs' arguments would let the administrative stay exception swallow the rule that the *Nken/Winter* factors govern the granting of affirmative relief. *Texas*, 144 S. Ct. at 799 (Barrett, J.); *see National Park Conservation*, 178 F.4th at 806. The district court's order has also impermissibly enabled it to avoid ruling on class certification or the appropriate scope of relief. Resp. 21; *contra CASA*, 606 U.S. at 861 (vacating preliminary injunctions "to the extent [they] are broader than necessary to provide complete relief to each plaintiff with standing to sue").

Plaintiffs' attempt to gloss over the district court's delayed application of Supreme Court precedent by asserting that there is no significant difference between the government's request for relief on this motion by August 6 and Plaintiffs' (with supplemental briefing ending August 20).[1] Resp. 11. That is mere obfuscation. For one thing, this Court set an even shorter briefing schedule on this motion than the government suggested—underscoring this Court's demand for "prompt[]" rulings on matters related to administrative stays. *National Park Conservation Ass'n*, 178 F.4th at 806. For another, Plaintiffs set apples (the government's request for a *ruling*) against oranges (the close of *supplemental briefing* in the district court). The district court has given no indication when, beyond the close of briefing, it intends to finally rule on the §705 motion Plaintiffs filed in *March*. Moreover, the government moved the district court to *immediately* lift its administrative stay on July 1—a week after the Supreme Court's *Doe* decision. Dkt. 77. Plaintiffs still offer no persuasive justification why the district court

---

[1] Plaintiffs contend that the district court must also hear (unscheduled) oral argument on their §705 motion, likely prolonging the district court's order even further beyond August 20. Resp. 24.

8

needs *six additional weeks*, three times the default schedule for a fully briefed motion, let alone supplemental briefing. *See* Resp. 17-21. Indeed, there is not the slightest reason to believe that Plaintiffs' §705 stay request got *stronger* after *Doe*.

Even excluding the time the case was held in abeyance to await *Doe*, the administrative stay here will amount to multiples of the permissible length of a temporary restraining order. *See* Fed. R. Civ. P. 65(b)(2) (limiting TROs to 14 days unless extended to 28 days "for good cause" based on "reasons" "entered in the record"). That is not "negligible." Resp. 11; *see* Resp. 17-18. To the contrary, the order far surpasses the Fifth Circuit's "troubling habit of leaving 'administrative' stays in place for weeks if not months." *Id.* at 803 n.\* (Sotomayor, J., dissenting). And it is particularly troubling where the Supreme Court has repeatedly concluded that the *Nken/Winter* factors favor the government in TPS challenges—precedents that Plaintiffs strikingly refuse to acknowledge or address. *See Doe*, 146 S. Ct. at 2137-40; *Noem v. National TPS Alliance*, 146 S. Ct. 23, 24 (2025); *Noem v. National TPS Alliance*, 145 S. Ct. 2728, 2729 (2025).

In sum, the district court's order is unwarranted, and it has endured for far longer than necessary to resolve Plaintiffs' March 9 motion for §705 relief. This Court should summarily vacate the district court's administrative stay and direct it to "promptly" adjudicate Plaintiffs' underlying §705 motion. *National Park Conservation*, 178 F.4th at 806; *see Texas*, 144 S. Ct. at 799 (Barrett, J.).

## II. This Court Has Authority To Address Indefinite Administrative Stays.

Appellate jurisdiction is no barrier to summary reversal. Mot. 9-13. There is no doubt that the district court's award of interim relief would be appealable if it had been labeled a preliminary injunction, a §705 stay, or even a temporary restraining order. *Abbott v. Perez*, 585 U.S. 579, 595 (2018); *see Department of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (staying order styled as a TRO because it "carries many of the hallmarks of a preliminary injunction"); *R.I. State Council of Churches v. Rollins*, 158 F.4th 304, 311 (1st Cir. 2025) (interlocutory appeal of TRO). Plaintiffs attempt to make the district court's choice to style its order an "administrative stay" dispositive, but that approach is foreclosed.

The government need not meet the requirements of *Carson v. American Brands, Inc.*, which apply to an order like the one at issue in

*Carson* that has the effect of *denying* an injunction. 450 U.S. 79 (1981) (attempt to appeal district court's interlocutory order refusing to approve settlement agreement). Here, the district court affirmatively *granted* interim and universal relief. That raises none of the difficulties of distinguishing between appealable and non-appealable interlocutory orders that could be described, in some abstract sense, as *refusing* to enter an injunction. *See id.* at 84-86. If the *Carson* test applied even to orders granting relief, every appellant would have to prove irreparable harm in order to appeal even a preliminary injunction, and the Court would lack appellate jurisdiction if it concluded an appellant was not irreparably harmed by the district court's order. That is plainly not the law.

The district court's months-long order controlling the effect of the Somalia termination plainly has the exact same practical effects as the §705 stay plaintiffs eventually plan to seek. Indeed, if the order did not have those effects, Plaintiffs would not be seeking such orders in multiple TPS cases, and they would not be content to prolong the existing state of affairs. And such orders do irreparably harm the government, as the

11

Supreme Court has made clear twice over. Mot. 22-24 (discussing irreparable harm).

The fact that this Court will later have jurisdiction over a §705 order "if it is issued," Resp. 11, does not undermine this Court's jurisdiction over the district court's undissolved months-long stay order. Resp. 9; *see Abbott*, 585 U.S. at 595 ("[D]istrict courts [cannot] shield their orders from appellate review by avoiding the label injunction."). The administrative stay order will *never* be appealable, in Plaintiffs' view. But district courts cannot evade appellate jurisdiction by refusing to rule. *Fortuno*, 582 F.3d at 134. And, contrary to Plaintiffs' assertions (Resp. 11), the government's ability to obtain judicial review of time-sensitive TPS determinations is thwarted when a district court *enters* an indefinite administrative stay and then refuses to promptly rule on the merits of a §705 motion. Nor does it matter that the district court initially leapt to enter the administrative stay before the government had appeared or could file an opposition brief. This appeal runs from the district court's order refusing to dissolve the administrative stay, and there was undoubtedly substantial adversarial briefing—indeed, full briefing on the §705 stay—by that point months into the case.

12

If any questions remained, this Court indisputably has mandamus authority because this motion "concerns the boundaries of the District Court's power." *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 10 (1st Cir. 2004). That question is critically important because other district judges have illustrated the problem by entering indefinite and unreasoned administrative stays blocking the Secretary's TPS determinations. Dkt. 106, *ACT I* (South Sudan); Dkt. 82, *ACT II* (Ethiopia). Further, the government is irreparably harmed by the district court's interference with its TPS determination here. Mot. 22-24. Because the district court has wielded its "administrative" stay far beyond the permissible limits of its judicial power, mandamus is warranted. *See Rossello-Gonzalez*, 398 F.3d at 10; Gov't Mot. 14-21; *see also Texas*, 144 S. Ct. at 799 (Barrett, J.).

## CONCLUSION

The Court should summarily reverse or grant a writ of mandamus directing the district court to dissolve its administrative stay.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH WELCH
*Senior Counsel to the Assistant Attorney General*

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
*Trial Attorney* (1st Cir. No. 1197225)
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4404
Email: Jeffrey.M.Hartman@usdoj.gov

14

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d)(1), I certify that the text of this reply is in double-spaced, proportionally spaced 14-point Century Schoolbook type, and the motion contains 2,494 words.

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the CM/ECF system and that service will be accomplished via the CM/ECF system.

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation

15